CHRIMES v. SQUIER.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. EQUITY—FORGED MORTGAGE—CANCELLATION.
    In an action to set aside a mortgage, in form duly acknowledged, on the ground that the mortgagor's signature thereto was forged, and the mortgage a cloud on plaintiff's title, it appeared that plaintiff held under a quitclaim deed from the mortgagor; that the mortgagee, the mortgagor's vendor, assigned the mortgage to the notary who took the acknowledgment, and the notary assigned it to defendant; that the mortgagor had, in an agreement with defendant for settlement of a previous action, recognized the mortgage as valid. The only witness was the mortgagor, who testified that his signature was forged, but his evidence on material collateral matters was falsified. Held, that the complaint was properly dismissed.

2. SAME—EVIDENCE.
    In an action to set aside a mortgage in form duly acknowledged on the ground that the mortgagor's signature was forged and the mortgage a cloud on plaintiff's title, evidence of the relations between the mortgagor and the notary, who took the acknowledgment, was material where it appeared that the mortgage was assigned to the notary and by him assigned to the defendant.

Appeal from special term, New York county.

Action by Walter A. S. Chrimes against William C. Squier to set aside a mortgage on the ground that the mortgagor's signature was forged, and the mortgage a cloud on plaintiff's title. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The opinion of Mr. Justice PATTERSON at special term is as follows:

"I would not be justified, on the uncorroborated testimony of the witness Austin, in declaring, so far as his signature is concerned, the mortgage purporting to have been executed and delivered by him and his wife to Ker, and assigned to the defendant, a forgery. That Mrs. Austin did not sign the mortgage is clear. Her name is not only incorrectly stated, but what purports to be her signature is in the same handwriting as that which purports to be her husband's; but the general style and character of the alleged forged signature of William Austin to the mortgage are the same as those of his genuine signature in evidence, allowance being made for the ordinary differences that always exist between admittedly genuine signatures. There can be no doubt of the force of Austin's testimony on his direct examination. He swears positively the signature to the mortgage is not his; that he never acknowledged it before the notary; that he was not in New York on the day named in the acknowledgment as the one on which the mortgagor appeared before the notary, and that he had but a slight acquaintance with the notary. But his cross-examination plainly shows a very uncertain and unreliable memory or something worse. The design of that cross-examination was to call out facts establishing close business relations between the notary and Austin, the latter having sworn he had no direct business with the notary, and scarcely knew him. Now, it plainly appears that this notary, Savage, had much to do with a certain tract of land at Claremont, of which the mortgaged premises formed a part. On a map of that tract or plot these mortgaged premises are designated '15 A,' next adjoining a lot designated 'No. 16.' Austin swears with absolute positiveness he never had any dealings with Savage as to either of these pieces. When asked about papers referring to both pieces, he swore, 'I never had any business with Mr. Savage in regard to it.' The further question was then asked whether Savage did not have an interest in the property when Austin took it, to which the witness replied in the negative, whereupon the following incident took place, as appears by the record, viz.: 'Plaintiff's Counsel: Are you referring to the property described in the complaint (lot 15 A)? The Court: I understand the question not to apply to plot 15 A, but to any portion of the whole 176 ft. Question. Do you know of Mr. Savage having any interest in any portion of the plot 176 ft. on Marcher avenue or Anderson avenue? Answer. I never did.' After the recess of the court this witness was again put on the stand, and he then swore that he did receive a deed from Savage of lot No. 16, bringing him directly into relations with Savage respecting the very lands of which 15 A and 16 formed parts, and both of which parts are covered by the mortgage in suit; but the witness added he was confused by previous questions, and had supposed they related to lot 15 A alone, and added, 'I did not understand that the two lots had anything to do with one another.' This is plain prevarication. Turning back to the early part of his cross-examination, he distinctly swears that there was a tract of 176 feet on Marcher or Third avenue, consisting of lots 15 A and 16, and that they were conveyed 'all in one deed.' On his second cross-examination, after his alleged correction of testimony before attended to, his attention was called again to the 176-foot lot, and he was asked: 'Question. Lot 16 is part of the plot 176? Answer. Nothing to do with it whatever. Q. Lot 16 adjoining lot 15 A? A. That I don't know. I don't know that. Q. Don't you know that lot 16 is part of the 176 feet front?. A. No, sir; I do not know. I never saw a plan of the lots. I did not know it was within a mile of it.' All the testimony with relation to these two pieces was quite material as showing that Savage was directly interested and connected with Austin in some transactions regarding the land, out of which transactions this mortgage was or may have been given, for it affects and covers a part (lot 16) which was conveyed directly by Savage's deed to Austin. That the witness was seeking to evade the effect of these considerations seems to be obvious, and that the whole truth was not disclosed and that there was suppression and concealment of something material, was apparent from the hesitancy and evasiveness of the witness. At all events, his cross-examina-

tion shows that his memory is altogether unreliable. On the discredited testimony of this witness it is not for the defendant to show the circumstances under which the mortgage was given, nor why it appears to have been executed by Mrs. Austin. The instrument is not successfully impeached as to the mortgagor Austin's signature, and there is no doubt that the defendant is the assignee of it in good faith. Complaint dismissed, with costs."

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and WILLIAMS, JJ.

Edwin B. Root, for appellant.
A. E. Woodruff, for respondent.

BARRETT, J. The decision rendered in this case at special term was correct, and we entirely concur in the opinion there handed down by Mr. Justice PATTERSON. The testimony of the mortgagor, Austin, upon which the plaintiff relied, was unworthy of credence. It was shaken, not only in collateral matters, but in much that was material to the direct issue of forgery. The mortgagee (one Ker) was the same person who had previously deeded the property to Austin. The mortgage was assigned by Ker to one Savage, and by Savage to the defendant. Savage was the notary public whose certificate of Austin's acknowledgment is appended to the mortgage. The relations between Austin and Savage were, under the circumstances, most material. We cannot agree with the appellant that the cross-examination upon this head was upon collateral or immaterial matters. It was direct and important. Austin plainly saw its materiality, and tried in every possible way to conceal his relations with Savage. He equivocated, suppressed what he knew, and, when closely questioned, falsified outright. To sustain the plaintiff's charge, Austin's testimony should at least have been clear and convincing. It was the reverse; and, further, it was entirely unsupported. Not another witness was called to sustain the charge. Austin's wife was not examined, nor was a single person who had ever seen him write. Upon the other hand, we find that in 1892 he made an agreement with the defendant for the settlement of an action which he had previously brought,—similar to the present,—and that that action was thereupon discontinued. This agreement impliedly recognized the mortgage, and makes provision for the application to its payment of whatever might be realized upon a sale of the property over and above $4,500. It is difficult to understand how a man who honestly believed that this mortgage was a forgery could have made such an agreement. His subsequent conduct indicates bad faith, even with respect to this agreement. Doubtless believing that he was estopped thereby from renewing his charge of forgery, he sought to evade the effect of the agreement by quitclaiming the property for a nominal consideration to the present plaintiff, and bringing this action in the latter's name. It is entirely clear that this was his design, and that he is still the real owner of the property, using the plaintiff to effect his inequitable purpose. The case is wholly without merit, and the judgment appealed from should be affirmed, with costs. All concur.